IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH CORN, | ) | |
| | ) | CASE NO. 5:13-CV-2458 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Kenneth Corn's ("Plaintiff" or "Corn") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance benefits on July 6, 2010. (Tr. 111-17). Plaintiff alleged he became disabled on November 30, 2009, due to suffering from left eye blindness and a low reading level. (Tr. 136). The Social Security Administration denied Plaintiff's application on initial review and upon reconsideration. (Tr. 59-75).

At Plaintiff's request, administrative law judge ("ALJ") M. Scott Kidd convened an administrative hearing on April 12, 2012, to evaluate his application. (Tr. 29-58). Plaintiff,

1

represented by counsel, appeared and testified before the ALJ. (*Id*).  A vocational expert ("VE"), Thomas Nimberger, also appeared and testified. (*Id.*).

On April 12, 2012, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 13-23).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id*.).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 6).  The Appeals Council denied the request for review, making the ALJ's October 25, 2011 determination the final decision of the Commissioner. (Tr. 1-5).  Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. EVIDENCE

### A. Personal Background

Corn was born on October 31, 1947, and was 64-years-old at the time of the ALJ's decision. (Tr. 36, 111). Accordingly, he was considered a "person closely approaching retirement age" for social security purposes. *See* 20 C.F.R. § 404.1563(e). Plaintiff attended special education classes, but completed a high school education. (Tr. 36, 155-57, 175-77). Corn has past relevant work as a blender or mixer, assembler, and shear operator. (Tr. 21, 48-52).

Plaintiff maintained a driver's license, but testified that he had a friend take the written portion of the license examination for him. (Tr. 46-47). Corn also testified that he can go to the store, regularly attend church, mow grass using a riding lawn mower, rake leaves, wash dishes, and go deer hunting. (Tr. 38-39).

### B. Medical Evidence

Prior to the relevant period, Plaintiff underwent a number of surgical procedures. These included surgery for lumbar disc disease in 1991. (Tr. 239). During 2006, Corn also underwent surgical repair of an inguinal hernia. (Tr. 229-31).

On August 28, 2010, Plaintiff treated with his primary care provider Joseph Thomas, M.D. (Tr. 194). Corn indicated that he had been laid off from work, but had no specific health complaints. A physical examination was largely unremarkable. (*Id.*). Dr. Thomas indicated that he saw Corn approximately twice per year. (Tr. 189).

A September 2010 eye examination revealed Corn had corrected visual acuity of 20/25 with his right eye and 20/400 with his left eye. (Tr. 185-86).

3

During October 2010, state agency reviewing physician Maureen Gallagher, D.O., conducted a review of the record and opined that Plaintiff did not exhibit exertional limitations, but had visual limitations in the left eye involving near acuity, far acuity, and depth perception. (Tr. 63-64). In January 2011, state agency reviewing physician Ali Shadchehr, M.D., affirmed Dr. Gallagher's assessment. (Tr. 71-72).

On August 20, 2011, Plaintiff reported to Dr. Thomas that he was walking regularly, losing weight, and "feeling wonderful," with no specific health complaints. Plaintiff asked that Dr. Thomas keep testing to a minimum due to his lack of health insurance. (*Id.*).

On March 1, 2012, Dr. Thomas noted that Plaintiff underwent surgery for lumbar disk disease in 1991. (Tr. 239). Corn indicated that he tried to exercise regularly. A physical examination was generally normal, with the abdomen showing no organ enlargement, masses, or tenderness. (*Id.*).

Following the administrative hearing before the ALJ, Plaintiff underwent two additional medical evaluations with state agency examiners. On May 3, 2012, state agency examiner Lokendra Sahgal, M.D., conducted a physical examination of Corn. (Tr. 242-44). Dr. Sahgal recounted that Plaintiff's past medical history included two bilateral hernia repairs, left elbow surgery, chronic low back pain, a lumbar laminectomy to remove a broken bone, gastroesophageal reflux disease, hyperlipidemia, and blindness in the left eye. (Tr. 242-43). Plaintiff complained of pain in both knees and low back. (Tr. 243). He also noted pain in his right groin with weakness, which caused him trouble lifting heavy objects. (Tr. 242). Corn stated that corrective lenses helped him to see normally, despite his loss of vision in the left eye. (*Id.*). Corn also claimed he was diagnosed with a learning disability in grade school and continued to

4

have difficulty reading and spelling, despite being able to write. (*Id.*). Dr. Saghal noted that Plaintiff was able to write his name and the names of his prescription medications. (Tr. 244).

Upon examination, Dr. Sahgal found that Corn had no difficulty maneuvering in the examination room. (Tr. 243). Plaintiff's vision with both eyes was 20/20 while wearing corrective lenses. Corn's spine had no bony tenderness and straight leg raising was negative. Dr. Sahgal noted some tenderness in the right groin area where surgery was performed, but found no lumps as Plaintiff had described. Plaintiff's upper and lower extremities and joints were grossly normal. (*Id.*). His neurological examination was largely normal. (Tr. 244). Dr. Sahgal opined that Plaintiff should be able to lift and carry 20 pounds frequently and occasionally; he would have no difficulty with tasks requiring walking or handling objects; his mental acuity was normal; his ability to climb, balance, stoop, crouch, kneel, or crawl were not limited; he was able to bend, squat, and walk on heels and toes; his speech and hearing were normal; and although Corn was legally blind in the left eye, the vision loss was compensated with normal vision in the right eye. (*Id.*).

That same day, Dr. Sahgal also filled out a "Medical Source Statement of Ability to Do Work-Related Activities." (Tr. 245-50). The doctor opined that Plaintiff could lift and carry up to 10 pounds continuously and up to 20 pounds frequently. (Tr. 245). The doctor based these limitations on Plaintiff's complaints of pain in his knees, low back, and right groin, and worries of recurring hernia. (*Id.*). Dr. Sahgal opined that Plaintiff could sit continuously for a total of 8 hours, but nevertheless found that Plaintiff could only sit for a total of 2 hours during an 8 hour day, and stand or walk for a total of 3 hours. (Tr. 246). Plaintiff had no limitations in his ability to use his hands and feet, and in postural activities. (Tr. 247-48). Dr. Sahgal indicated that Plaintiff would be unable to avoid ordinary hazards in the work place due to his visual

5

impairment without wearing corrective lenses. (Tr. 248). The physician recommended that Plaintiff could frequently tolerate exposure to unprotected heights occasionally and moving mechanical parts. (Tr. 249). Dr. Saghal based these limitations on Plaintiff's low-back pain status post-laminectomy and bilateral knee pain. (*Id.*). Taking into account Corn's physical impairments, Dr. Saghal opined that Plaintiff could perform activities such as shopping, traveling without a companion, ambulating independently, walking a block at a reasonable pace, using public transportation, climbing steps at a reasonable pace, preparing a simple meal, caring for personal hygiene, and sorting or handling paper. (Tr. 250). Dr. Sahgal reiterated that Plaintiff could not lift heavy objects over 20 pounds due to groin and low back pain. (*Id.*).

On May 17, 2012, Corn underwent a psychological evaluation with psychologist William Mohler, M.A. (Tr. 259-64). Plaintiff reported that he graduated from high school in a special education program and performed fairly well in the occupational portions of his education. (Tr. 260). Corn described some occasional bouts of depression, mostly related to unemployment, but had never sought mental health treatment. In terms of daily living activities, Plaintiff indicated that he spent most of his time performing household tasks, exercising three times each week with his wife, attending church regularly, and spending time with friends. Plaintiff also enjoyed hunting over the years, but currently did not have as much interest in it as he did in the past. (*Id.*).

Upon performing a mental status examination, Mr. Mohler found Plaintiff's appearance, behavior, speech, thought content, and affect were appropriate. (Tr. 261). Corn's insight, judgment, and memory functions were in the low normal range. His concentration was adequate, but his ability to abstract and generalize were impaired, and ability to perform mental math calculations were in the low normal/borderline range. Plaintiff was able to handle addition and subtraction while using his fingers, but had difficulty with multiplication and division. (*Id.*). On

6

the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") Corn obtained a verbal comprehension score of 68, a perceptual reasoning score of 84, a working memory score of 83, a processing speed score of 76, and a full-scale score of 73. (Tr. 262).

Mr. Mohler diagnosed Plaintiff with borderline intellectual functioning and assigned a Global Assessment of Functioning ("GAF") score of 60, representing moderate symptoms. (*Id.*). He indicated that intellectually, Corn functioned in the borderline range. (Tr. 263).

In terms of functioning, Mr. Mohler opined that Plaintiff's borderline intellectual levels and low normal memory skills suggested that his ability to understand, remember, and carry out instructions would likely be below individuals with low average intellectual functioning. Corn would not have difficulty maintaining persistence and pace to perform simple tasks, but difficulty while performing multi-step tasks. There was no evidence that Plaintiff would have difficulty responding appropriately to supervision and coworkers. Lastly, Mr. Mohler indicated that Corn's limited intellectual skills would suggest difficulty in responding appropriately to work-related pressures, in that Plaintiff was likely to have difficulty problem-solving in an attempt to deal with unexpected changes a work environment. (*Id.*).

In a Medical Source Statement form, Mr. Mohler further opined as to Plaintiff's capacity to perform work-related activities. (Tr. 256-58). Corn had no limitations in his ability to understand, remember, and carry out simply instructions. (Tr. 256). He had mild limitations in his ability to make judgments on simple work-related decisions. Mr. Mohler identified marked limitations in the areas of understanding, remembering, and carrying out complex instructions; and making judgments on complex work-related decisions. (*Id.*). Corn had no limitations in his ability to work with the public, supervisors, and co-workers, and only mild limitations in responding to usual work situations and changes in routine work setting. (Tr. 257).

7

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant did not engage in substantial gainful activity since November 30, 2009.

3. Through the date last insured, the claimant had the following severe impairments: blind in left eye, status-post hernia repairs with chronic pain, borderline intellectual functioning.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except the claimant may never climb ladders, ropes or scaffolds and must avoid all exposure to workplace hazards such as unprotected heights; the claimant is limited to work tasks that do not require depth perception; the claimant is limited to the performance of work tasks that are simple and routine, which are undertaken in a work environment that is static [defined as one in which changes are infrequent, with ample opportunity for such changes as do occur to be fully explained and/or demonstrated] and in which reading and mathematics are not required for either self-instruction or for the performance of essential core elements of the job.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on October 31, 1947 and was 62 years old, which is defined as an individual closely approaching retirement age on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

    . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2009, through the date of this decision.

(Tr. 15-23) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, it may examine all the evidence

9

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  Listing 12.05C

In his first allegation of error, Plaintiff contends the ALJ incorrectly concluded that his impairments did not meet or medically equal Listing 12.05C, the listing for mental retardation. Plaintiff asserts that the evidence warrants a finding of disability at step three.

At the third step of the disability evaluation process, the ALJ must evaluate whether the claimant's impairments satisfy the requirements of any of the medical conditions enumerated in the Listing of Impairments within 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 416.925(a), 404.1520(a).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 416.925(c)(3), 404.1520(c)(3).

In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).  However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled at this stage if his impairments "medically equal" the listing.  20 C.F.R. §§ 416.926(b)(3), 404.1526(b).  To do so, the claimant must present "medical findings" that show his impairment is "equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original).  It is not sufficient for a plaintiff

10

to demonstrate that the overall functional impact of his impairments is as severe as that of a listed impairment. *Id.*

In relevant part, Listing 12.05C provides as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the [claimant demonstrates]
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Essentially, a claimant must make three showings to satisfy Listing 12.05C: (1) he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested" before age 22; (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id. See also Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001).

Here, the ALJ provided the following analysis of the listing:

> Although the claimant registered a verbal IQ score of 68 (6F/7), the claimant's other severe impairments do not impose a significant work-related impairment of function. Despite the IQ results, the claimant had amassed a significant work history at a semi-skilled job (12E/1). Despite his vision impairments, the claimant has been able to maintain his driver's license, hunt (hearing testimony), and exhibit 20/25 vision in his unaffected eye (1F/3). Despite the residuals of his hernia operations, the claimant is able to engage in household chores, yard work, and a regular exercise program (2F/3), (6F/4).
>
> Moreover, I note that the record contains insufficient evidence to establish that this impairment manifested itself prior to the claimant's attainment of age twenty-two (11E), (5E).

11

(Tr. 16).

The ALJ accepted that Corn met the verbal IQ score requirements of the listing. According to Plaintiff, the record contains sufficient evidence showing that he likewise meets or medically equals the remaining listing requirements. In regard to an impairment imposing an additional and significant work-related limitation, Corn asserts that the following evidence is sufficiently demonstrative: the state agency physicians identifying limited visual acuity and depth perception; the ALJ's finding that blindness in the left eye and chronic pain status post hernia repairs were severe impairments at step two; and the ALJ finding that he was limited to work at the medium exertional level.

Corn also maintains that the record shows deficiencies in adaptive functioning prior to age 22. More specifically, Corn argues that he was enrolled in high school special education courses, required assistance to pass the driver's examination, never wrote a check, and exhibited literacy and math deficits.

Plaintiff's arguments do not undermine the substantial support that exists for the ALJ's listing conclusion. As the Commissioner points out, the Sixth Circuit has emphasized that it is not sufficient for a claimant to point only to an IQ score that meets the requirements in Listing 12.05, the claimant must also meet the other requisites. *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007). Plaintiff fails to carry his burden in this case.

The ALJ appropriately concluded that Plaintiff's other severe impairments of left eye blindness and chronic pain following hernia repairs did not impose significant work-related impairments of functioning. (Tr. 16). As the ALJ explained, despite these impairments, Corn performed a number of activities without significant limitation. For instance, Plaintiff was able to maintain a driver's license, hunt, complete household chores, perform yard work, and maintain a regular exercise program. (*Id.*). Additionally, vision in Corn's unaffected eye

remained at 20/25. (*Id.*). Although the ALJ identified that Plaintiff suffered from severe impairments at step two of the sequential analysis, and also identified some restrictions in the RFC, these findings simply do not lead to the conclusion that Plaintiff met or equaled this requirement of the listing, as they are separate parts of the sequential analysis.

Additionally, the ALJ correctly observed that the record contained insufficient evidence to demonstrate onset of the impairment before age 22. Plaintiff does not present any diagnosis of mental retardation prior to 22. Although Mr. Mohler diagnosed Plaintiff with borderline intellectual functioning, the diagnosis was issued when Corn was significantly older than 22, and is nonetheless insufficient to meet the listing's diagnostic description of mental retardation. *Cooper*, 217 F. App'x at 452 (finding that a diagnosis of borderline intellectual functioning did not render the plaintiff disabled under Listing 12.05C). Nor does the evidence which Plaintiff points to undermine the ALJ's finding. For example, although Corn argues that he was in high school special education classes, he still successfully completed schooling. (Tr. 16). This evidence is further offset by Corn going on to amass a significant work history, including the performance of semi-skilled work. (Tr. 19). Corn also asserts that he had a friend take the written portion of his driver's examination, but as the ALJ observed, Plaintiff was able to maintain a license. (Tr. 16, 37).

Accordingly, there is substantial evidence in the record that shows Corn did not meet or medically equal Listing 12.05C.

### B. Dr. Sahgal

Plaintiff maintains that the ALJ had a duty to re-contact state agency consultative physician Dr. Sahgal to clarify or explain any inconsistency in the doctor's report. Without

13

doing so, Plaintiff posits that it was error for the ALJ to reject the opinion and instead base the disability determination on evidence that was allegedly insufficient to render a decision.

In his opinion, the ALJ accorded "little weight" to the opinion of one-time examiner Dr. Saghal. (Tr. 20). The ALJ explained that he did so because Dr. Saghal's opinion was internally inconsistent, as the doctor opined that Corn was both unlimited and limited in some of the same exertional areas. (*Id.*). Additionally, the ALJ pointed out that Dr. Saghal imposed limitations based on Plaintiff's subjective complaints of knee pain and fear of recurrent hernias. (*Id.*).

In support of his argument, Plaintiff cites to 20 C.F.R. § 404.1519p(b) which states:

> If the report [of the consultative examiner] is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report.

Unfortunately, Corn's contention misses the mark because the regulation only requires the ALJ to contact the examiner if the report is "inadequate or incomplete." Here, Plaintiff has not made the requisite showing of inadequateness or incompleteness.

The ALJ's conclusion that Dr. Saghal's opinion was internally inconsistent does not render the doctor's opinion inadequate or incomplete such that the ALJ had a duty to pursue additional clarification. As 20 C.F.R. § 404.1527(c) explains, the ALJ is to weigh the opinion of medical sources while taking into consideration a number of factors, including examining relationship, treatment relationship, supportability, consistency, specialization, and any other factors. Here in accordance with the regulation, the ALJ appropriately evaluated Dr. Sahgal's opinion and gave reasons that well-support attributing little weight to the opinion. As the ALJ accurately explained, the limitations set forth in Dr. Sahgah's medical source statement were both internally inconsistent and were, in part, based on Plaintiff's subjective complaints, rather

14

than medical signs and laboratory findings. The ALJ found Plaintiff to be not fully credible in his reports of pain and other symptoms, a finding which Plaintiff does not now contest.

Moreover, Plaintiff fails to demonstrate how the record was not sufficiently developed such that the ALJ had a duty to seek further information from Dr. Saghal.[2] The ALJ has a duty to ensure that a reasonable record has been developed, *see Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986), but it is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision regarding his disability status, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). An ALJ is not required to supplement the record with additional evidence unless the record as it exists is insufficient to assess a claimant's residual functional capacity or otherwise resolve his claims. *Stevens v. Comm'r of Soc. Sec.*, No. 1:12-CV-977, 2014 WL 357307, at *6 (W.D. Mich. Jan. 31, 2014). While reviewing Corn's application, the ALJ had treatment notes from primary care physician Dr. Thomas, reports from state agency reviewing physicians, and Corn's testimony at the hearing. This evidence, combined with the lack of complaints of, and treatment for, physical health problems during the relevant period, was sufficient to present the ALJ with a picture of Plaintiff's physical functioning.

---

[2] The Court notes that although the agency will normally request as part of the consultative examiner's report a medical source statement regarding what a claimant can do despite his limitations, one is not required and the lack of such a report does not make the record incomplete. 20 C.F.R. § 404.1519n(c)(6).

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  December 3, 2014.